ALDRIDGE *v.* ALDRIDGE

[77 South.  150, Division A.]

1. MARRIAGE.  *Presumptions.   Divorce from former wife.*

A marriage duly proved will be presumed valid, although a former
wife of the man may be still living and there be no evidence
of a divorce from her, the burden of proof to show the negative
fact that there was no divorce being on the party who denies the
validity of the second marriage.

2. DIVORCE.  *Alimony.   Necessity of valid marriage.*

There is no foundation for alimony on the granting of a divorce,
where each of the parties to a purported marriage had been mar-
ried previously and not divorced and both of the former spouses
were living, since in such case the last marriage was void.

3. DIVORCE.  *Alimony.   Necessity of valid marriage.   Code* 1906, *sec-
tion* 1673.  *Hemmingways Code, section* 1415.

Under Code 1906, section 1673, Hemmingways Code, section 1415,
providing that, when a divorce shall be decreed, the court may,
in its discretion, as may seem equitable and just, make all orders
touching the maintenance and alimon, of the wife, it would
not be equitable and just to award alimony on the granting of
a divorce to a woman who was not legally married to the de-
fendant, but who to all intents and purposes, was simply his
mistress, although she had aided him in the accumulation of
what property he had.

APPEAL from the chancery court  of Washington county.
HON. E. N. THOMAS, Chancellor.

Suit by Jennie Aldridge against J. E. Aldridge.  From
a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*W. A. Henry,* for appellant.

Was the "marriage," between complainant and defendant in Greenville, in July, 1914, a valid marriage? On this proposition hangs all the law applicable to this case.

If the marriage was legal, and made them husband and wife, then the decree made by the court below may be sustained; otherwise, there must be a reversal and decree here for the defendant, certainly on the question of counsel fees and support, for, without the marriage relation, alimony cannot be awarded, marriage being the very foundation of the wife's right to support.

In this state of case, the unbroken authority in Mississippi is: A marriage duly proved will be presumed valid, although a former spouse be living and there be no evidence of a divorce, the burden of proof to show the negative fact that there was no divorce being on the party who denies the validity of the marriage, and two marriages being established by proof, the presumption would arise in favor of a divorce, in order to sustain the second marriage, and the law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it, that such requirement is enforced even though it involves the proving of a negative. *Railway Co.* v. *Beardsley,* 79 Miss. 423; *Hull* v. *Rawls,* 27 Miss. 471; *Gibson* v. *State,* 38 Miss. 313; *Spears* v. *Burton,* 31 Miss. 457, 554; *Collins* v. *Wilkie,* 48 Miss. 496; *K. of P.* v. *Tucker,* 92 Miss. 505. See also *State* v. *Bennett,* 100 Miss. 684, where the cases are reviewed and the distinction in the rule in civil and criminal cases defined. On page 695, the court says:

"It is the well-established rule in civil cases that, in attacking the validity of a marriage ceremony on the ground of a former marriage, the burden of proof is

upon the attacking party to show that there was no divorce from the first wife. This is the well-established rule in civil cases but it is equally as well established that the rule does not apply in prosecutions for bigamy.''

Now it is clear that complainant is attacking the validity of the marriage of Milton and herself by setting up that several years prior to their marriage, Milton Streetor had married Mollie Brown, and that Mollie was alive when complainant and Milton Streetor wedded, and therefore the later marriage was a nullity, and that the subsequent marriage to defendant Aldridge was legal. But the law says: ''You will not be permitted to annul a solemn marriage contract, and bastardize the issue thereof, unless you go a step further and show that no divorce was had dissolving the former marriage.''

Surely, the law as adjudicated for ages will not be relaxed in favor of complainant, who does not deny the proof that, at the time of the alleged marriage to Aldridge she knew she had a living husband and was advised that he had a living wife.

Presumptions may be wholly disregarded in this case, however, for the proof is clear and convincing that the defendant had a living wife at the time of the alleged marriage with complainant, that they lived together as husband and wife for several years, were generally recognized as husband and wife, and two children were born to them during their wedded life. 14th A. & E. Enc. of Law, page 525, states the law to be: ''Any person present at the marriage may testify there to whether a third party of the celebrant, and, in general, even the parties themselves; See authorities there cited. See also Cyc. page 1198, and authorities cited. *Henderson v. Cargill,* 31 Miss. 409.

Now if a marriage can be proved by the declaration of the parties, surely no court would hold that the parties

themselves living could not testify to the marriage. "Proof that a man and woman cohabited as husband and wife is evidence from which a court or jury might infer the existence of a marriage between them, and, if unrebutted, would necessarily be conclusive. Ib. 419. *Lake v. Lake, et al.* No. 18002, of Supreme Court of Miss.; *Williams* v. *Drinkhouse estate* (a Pennsylvania case), 24 Atl. 1083; *Rust* v. *Oltmer* (a New Jersey case), 67 Atl. 337; *In Re Richards Estate* (a California case) 65 Pac. 1034.

On the question as to whether it was competent to award counsel fees and support, against the defendant in this case under the proof in the case, I beg to say:

The *McFarland case,* 64 Miss. 449, was a suit by the wife against the husband for alimony (not seeking a divorce), alleging the marriage and that he had driven her from home and he had refused to receive her back or make provision for her support. The husband answered, denying he had driven her from home, but expressed the hope that she would not return. Thereupon, the wife moved for alimony *pendente lite* and an attorney's fee. The Chancellor heard oral proof to determine amount to be awarded. The attorney for the husband urged that oral proof was not admissible. The supreme court ruled otherwise.

The *Reed case,* 85 Miss. 126, was a suit for divorce and alimony. The answer denied the validity of marriage and alleged that complainant, at the time of her marriage to defendant, was married to another and had obtained no divorce, and also denied grounds for divorce. On application for alimony *pendente lite,* defendant requested that the hearing be continued until he could take testimony which was denied; whereupon defendant offered evidence to show complainant's marriage to one Brooks before her pretended marriage to defendant, which evidence was excluded, and from a

decree allowing alimony *pendente lite,* defendant appealed to the supreme court. The opinion of that court was:

"The learned chancellor seems to have held that under no circumstances could evidence be heard against allowing alimony *pendente lite.* The general rule is, of course, that such alimony will be allowed, and the merits not inquired into. But it is equally well settled that where the answer denies there ever was a marriage, and that averment, clearly, from the showing made, appears to be true, no alimony *pendente lite* should be allowed; and this for the reason, as stated in *McFarland* v. *McFarland,* 64 Miss. 449, 1 So. 508, that marriage is the very foundation of the wife's right to support. It would be monstrous that the law should require the payment of alimony *pendente lite* to one who clearly never was a wife. Some *prima-facie* showing of marriage must be made when it is allowed. So are all the authorities. See 7 Am. & Eng. Ency. Law, 101, with notes." Correct reference, 2 Am. & Eng. Ency. Law (2 Ed.), p 101. The instant case is even stronger than the Reed case, in that complainant and defendant each knew that the other had a living spouse. *Holbrook* v. *Holbrook,* 32 La. 13; *Collins* v. *Collins,* 71 N. Y. 274. The action was for divorce and alimony.

The above decisions refer to alimony *pendente lite.* But if, as Judge WHITFIELD says in *Reed* v. *Reed.* "It would be monstrous that the law should require the payment of alimony *pendente lit*e to one who clearly never was a wife," then it would be a monstrous monstrosity to require payment of permanent alimony to one who clearly never was a wife. That complainant never was a wife of defendant is shown conclusively by this record. A legal marriage is the very foundation of the obligation of the husband to support the wife. "So are all the authorities." *Reed* v. *Reed,* 85 Miss. 128; *McFarlane* v. *McFarlane,* 51 Iowa, 565.

If "moral turpitude" is to weigh in this case, and it is absurd to think it will, but the case will be decided on the law and evidence, then complainant is tared with the same stick that the defendant is, and she being complainant, asking for affirmative relief, has no standing in court.

*T. E. Mortimer* and *Geo. Butler,* for appellee.

It may be admitted that at common law, under the facts shown by this record, that the wife would not be entitled to alimony as alimony. The contention of the appellee in this regard is that the statute of Mississippi changed the common law on this subject and now authorizes alimony in all cases. That even at common law, independent of any statutory provision, the equity court had the power and frequently exercised the power to award the wife compensation even though the marriage was declared void.

"The matter of alimony is regulated by statute in many of the states, and by them is allowed, as a general rule, in favor of the wife in all cases of divorce. It is said, however that where the divorce is unqualified and absolute. The nature and principals of the provisions to be made for her rights are essentially and radically different."

"As a general rule, at common law, no alimony could be assigned to the wife from whom the husband had obtained a divorce for her fault or misconduct, as for adultery on her part."

"And in several states alimony is allowed only upon a divorce obtained for the adultery or other fault of the husband, and expressly prohibited when for the adultery of the wife. But independent of considerations of exact justice in order that the offender may not become an outcast from society, and upon the further human and moral ground that the wife may not become tempted to continue

in a course of vice, it is provided by statute in many of the states that the husband must make provision for his erring wife upon divorce from her. And under statutes providing generally that when a divorce is decreed the court may make such an order as to the maintenance of the wife as may seem proper, it is held that the court may make provision for the guilty wife." 2 Am. & Eng. Enc. of Law, 110-119.

This same general doctrine is supported by the text in R. C. C. Alimony, sections 15-15-52-66-82-82-86.

The effect of section 1673, Code of 1906. Hemmingway's Code, section 1415, is to confer jurisdiction upon the chancery court to allow alimony in all cases where it "may seem equitable and just to do so." The history of this section shows this was the purpose. Our first enactment upon this subject is the act of June 1, 1822. This act was amended February 13, 1840. Hutchinson's Code, section 1495, *et seq.*

These acts as amended gave the chancery court jurisdiction of all causes of divorce by that act directed and allowed. Section 3 of the act as amended provides: "Divorce from the bonds of matrimony shall be decreed in case the parties are within the degrees prohibited by law; in case where either party is naturally impotent and in case of adultery in either of the parties, and also for wilful, continued and obstinate desertion for the term of three years."

Section 4 of that act provides: "Divorce from the bonds of matrimony shall also be decreed where either of the parties had another wife or husband living at the time of such second or other marriage."

Section 6 of the Act of 1822 authorized the court to grant a divorce from bed and board in cases of extreme cruelty. Sections 2 and 3 of the Act of February 13, 1840, made extreme cruelty a ground for divorce absolute.

Section 7 provided: "When a divorce shall be decreed on account of the parties being within the prohibited degrees of for the cause of adultery or extreme cruelty, the court shall and may in every case take such order touching the care and maintenance and alimony of the wife or any allowance to be made to her, and if any, the security to be given for the same, as from the circumstances of the parties and nature of the case may be fit, equitable and just."

It will be noted that under these acts, no alimony could be awarded if the bonds of matrimony were dissolved because either party was naturally impotent; for wilful, continued or obstinate desertion, or, if either party had another husband or wife living at the time of the second marriage.

The Code of 1857, pages 333-335, authorized divorce if the parties were within the degrees prohibited by law; for natural impotency or adultery; being sentenced to the penitentiary for not less than two years, and not pardoned before being sent there; for desertion for three years.

It was also provided that divorce from the bonds of matrimony may also be decreed if the husband have another wife living at the time of the second or subsequent marriage. Divorce from bed might be decreed for extreme cruelty or habitual drunkedness, and section 15 authorized a divorce where the other party was insane or an idiot at the time of the marriage, if the party applying did not know of the insanity.

Section 17 is as follows: "When a divorce shall be decreed either from the bonds of matrimony or from bed and board, the court may, in its discretion, make all orders touching the maintenance and alimony of the wife or any allowance to be made to her and may if need be, require secureties for the same so allowed, having regard to the

circumstances of the parties, and the nature of the case, as may be equitable and just."

The effect of the amendment contained in the Code of 1857 was to extend the right to alimony to all classes of divorce proceedings. That is, to divorce for natural impotency; for wilful, continued and obstinate desertion, and where a divorce was granted because of a prior undissolved marriage and to the new grounds of divorce for the first time appearing in the Code of 1857. The provisions of the Code of 1857, were continued in effect, substantially though with change of phraseology and arrangement in the Codes of 1871, 1880, 1892, and 1906.

These statutes gave power to the chancery court to award alimony in divorces a *mensa et thoro,* a power that the ecclesiastical courts did not possess at common law. It also gave the chancery court discretion to award alimony to the wife even though divorce was obtained from the wife because of her misconduct or adultery and changed the ecclesiastical and common law in this regard.

Our own court in speaking of this statute, quotes from *Coon* v. *Coon,* 26 Ind. 189 and *Hendrick* v. *Hendrick,* 28 Ind. 291, and points out the language of the Indiana statute and says that our statute is as broad in its scope; quotes with approval from *Groves* v. *Groves,* 108 Mass. 314, and points out that the English Parliament upon granting a divorce to a husband on the ground of adultery of his wife, requires him to make a provision for her out of his estate. *Jee* v. *Furlough,* 4 D. & R. 11. The court then pointed out the modification of the common law made by our statute and held that the court might, in proper cases, decree alimony to the wife where the husband is granted a divorce.

Justice Smith in a concurring opinion in that case says: "The allowance of alimony in this state is governed by section 1673 which provides that it may be

allowed in all cases where it may seem equitable and
just to do so.'' That is our exact contention in
this case. *Brown* v. *Brown,* 18 Ill. App. 445; *Lee* v.
*Lee,* 104 North Carolina, 603; *Vanvalley* v. *Vanvalley,*
19 Ohio St. 588; *Rickard* v. *Rickard,* 26 L. R. A.
(N. S.) 500; *Stableburg* v. *Stableburg,* 77 Conn.
31; *Griffin* v. *Griffin,* 47 N. Y. 134; *Higgins* v. *Higgins,* 164
N. Y. 4; *Barbour* v. *Barbour,* 77 Iowa, 303; *Webb* v. *Way-
be,* 44 Mich. 674; *Hunt* v. *Hunt,* 22 L. R. A. (N. S.) 1202;
*Willits* v. *Willits,* 76 Neb. 228; *Werner* v. *Werner,* 41
L. R. A. 349; *Daniels* v. *Morris,* 54 Iowa 364; *Wilkinson* v.
*Wilkinson,* 674 Lt. (N. S.) 62.

Under our statute it was a matter committed to the dis-
cretion of the trial court as to whether that court would or
would not allow attorney's fees and alimony under the
facts of this case. Certainly it cannot be said that the de-
fendant stands in any favorable light in setting up his
moral turpitude in defense of his wife's right to support.
Neither reason nor justice would require that the conse-
quenses of that unlawful marriage be visited alone upon
the wife. The position of the husband does not appeal
very strongly to the enlightened conscience of this age.

While we think the statute in this case is absolutely
controlling, it is perhaps well to bear in mind that at com-
mon law and independent of any statute, the chancery
court would work out equities in cases of this kind.

It will be noted that the appellant alleged in her bill
that the property accumulated was largely the result of
her personal labor and undertook to show this fact at the
trial of the case. The court took the view, however, that
under the statutes of the state this fact was immaterial.
Probably an erroneous view, because that fact might be-
come an important question in determining the amount
of the allowance to be made to the wife. However, the
appellee is not in a position to complain of this error.

Independent of the statute, ''both in England and the
United States where the marriage was void as when the

husband had a former living wife, and the woman was of good character and blameless, and allowance had been decreed her," 1 Am. & Eng. Enc. of Law, 118; *Scrimshire* v. *Scrimshire,* 4 Eng. Enc. 562; *Strode* v. *Strode,* 5 Bush. (K.) 228; *Werner* v. *Werner,* 41 L. R. A. 349; Thelford on Marriage and Divorce, 17 Law Lib. (N. S.) 347, 587; *Jones* v. *Brimssmade,* 3 L. R. A. (N. S.) 194; *Webb* v. *Wayne,* 144 Mich. 647; *Johansen* v. *Johansen,* 128 N. S. (Supp.) 892; *Higgins* v. *Sharp,* 164 N. Y. 4. These same principles are announced in *Willits* v. *Willits,* 76 Neb. 228, 5 L. R. A. (N. S.) 767; *Hunt* v. *Hunt,* 22 L. R. A. (B. S.) 1202; *Barbour* v. *Barbour,* 77 Iowa, 303; *Wilkinson* v. *Wilkinson,* 74 Lt. (N. S.) 62; *Elliott* v. *Elliott,* 77 Wis. 634; *Avery* v. *Avery,* 22 Wash. 267; *Coats* y. *Coats,* 36 L. R. A. (N. S.) 844; *Mitchell* v. *Fish,* 36 L. R. A. 838.

It is insisted however, by counsel for appellants that the question under discussion is forever closed by *Reed* v. *Reed,* 85 Miss. 126, that by that decision this court is finally and irrevocably committed to the doctrine that there can be no alimony unless there was a lawful marriage.

It the learned judge, who wrote the opinion in that case meant to hold that alimony could not be allowed at a suit of the wife, when the husband admitted a *de facto* marriage, and plead that the *de facto* marriage was void because of the incompetency in one of the parties to enter into that relation, he fell into grievous error, and the learned judge is not supported by the text upon which he relies. The court was in error as to what was a *prima facie* showing, according to the very authority cited. "It is generally held that proof or admission of a *de facto* marriage presents a proper case for the allowance of alimony *pendente lite,* though a marriage *de jure* is denied. So in suits of divorce rendering the marriage null and void from the beginning, as where divorce is sought on the ground of another marriage, alimony

*pendente lite* may be allowed upon proof of marriage in fact."

The text is supported by a great number of authorities from England, Canada and the United States. There is no decision in Mississippi that is conclusive against us. To the contrary, under the principles announced in *Winkler* v. *Winkler, supra,* appellee should be entitled to her alimony and attorney's fees.

SMITH, C. J., delivered the opinion of the court.

This proceeding was instituted in the court below by appellee to obtain a divorce and alimony from her alleged husband, on the ground of cruel and inhuman treatment. Appellant in his answer to the bill denied the cruel and inhuman treatment, and further alleged that appellee was not his lawful wife, for the reason that at the time of her alleged marriage to him she had a living and undivorced husband and that he had a living and undivorced wife. The evidence disclosed the marriage of appellant and appellee and their cohabiting thereafter as husband and wife; that about seventeen years prior to her marriage to appellant, appellee married one Milton Streetor, and their cohabiting together for some time thereafter as husband and wife; that she had not been divorced from him; that some years prior to appellee's marriage with Streetor, he married Molly Brown, who is still living, and their cohabiting together some time thereafter as husband and wife. As to whether or not Streetor and Molly were afterwards divorced does not appear from the record, the evidence being wholly silent relative thereto. It further appears from the evidence that appellant, some years prior to his marriage with appellee, married one Laura Thompson, who is still living; that they cohabited together as man and wife for some time thereafter and have never been divorced, which fact was known to appellee at the time

she married appellant. There is also evidence tending to prove appellee's claim that appellant's treatment of her was cruel and inhuman. Appellee offered, but was not permitted by the court to prove, that she had aided appellant to accumulate what property he has. The court below granted appellee a divorce and by its final decree further ordered appellant to pay her the sum of one hundred and fifty dollars as a solicitor's fee, and twenty-five dollars per month thereafter, as alimony. After this appeal was taken, appellant died, and it was revived in the name of his administrator, so that the correctness of the decree appealed from, in so far as the granting of the divorce is concerned, is now merely incidental; the main question being whether or not the attorney's fee and alimony should have been allowed.

Appellee's marriage to Milton Streetor must be presumed to be valid, in the absence of evidence that Streetor had not been divorced from his former wife (*Railway Co.* v. *Beardsley,* 79 Miss. 417, 3 So. 660; *Knights of Pythias* v. *Tucker,* 92 Miss. 505, 46 So. 51; *Bennet* v. *State,* 100 Miss. 684, 56 So. 777), so that it necessarily follows, because she had not been divorced from Streetor, and also because appellant had not been divorced from Laura, that her marriage to appellant was void, and the foundation of her right to alimony, according to *Reed* v. *Reed,* 85 Miss. 126, 37 So. 642, that is, a marriage valid in its inception, does not exist.

We are not here called upon to determine whether or not this rule would apply in view of the provisions of section 1673, Code of 1906 (Hemingway's Code, section 1415), in event appellee had married appellant without knowledge of the facts that render the marriage void.

Even if it be true that appellee aided appellant in accumulating what property he has, that fact would not render the allowance of alimony to her "equitable and just," for under the facts here in evidence she not only

was not appellant's wife, but to all intents and purposes was simply his mistress.

The decree of the court below will be reversed in so far as it awards a solicitor's fee and alimony, and the bill to that extent will be dismissed.

*Reversed.*