654 So.2d 33 (1995)
Demetra WEEKS
v.
George WEEKS.
No. 93-CA-00005-SCT.
Supreme Court of Mississippi.
April 6, 1995.
*34 Paul Kelly Loyacono, Vicksburg, for appellant.
Robert C. Boyd, Boyd & Akin, Jackson, William E. Murray, Natchez, for appellee.
En Banc.
McRAE, Justice, for the Court:
This appeal arises from an order of the Warren County Chancery Court vacating the grant of separate maintenance to a woman who had participated in a void marriage. Demetra Weeks now seeks reinstatement of the chancellor's original order granting her separate maintenance in the amount of $2000 per month from George Weeks. That order was entered before the parties' familial relationship of niece and uncle was made known to the chancellor. Finding that the chancellor correctly vacated the award after determining that the marriage was void, we affirm.

I.
George and Demetra Weeks were ceremonially married on February 9, 1984, in North Carolina. It was the fourth marriage for 34 year old Demetra and the third for 36 year old George. George and Demetra lived thereafter as man and wife for a period of nine years. Although Demetra has a daughter by a previous marriage, no children were born of her alleged marriage to George.
Demetra testified she had been engaged to marry another man when approached by George, a United States Marine on active duty, whom she knew was her mother's brother and her own uncle. According to Demetra, her fiancee had some family problems and George promised to love her the rest of her life. She broke her engagement and agreed to marry her Uncle George. Demetra further testified she consulted with her church and George consulted with military clergy, and there were no religious objections to the marriage. Demetra said they never thought about state laws. Even if they did, Demetra claimed, she relied upon George to check the legality of the marriage under North Carolina civil law.
George retired from the Marine Corps in 1989, and the parties returned to Mississippi where he was employed as a manager for a Sonic Drive-In in Vicksburg. He later became a partial owner of a Sonic Drive-In in Natchez. By this time, according to Demetra, the marriage was "[s]tanding on shaky grounds" and George wanted a divorce.
At all times prior to this action, George acted as the spouse of Demetra Weeks. They lived together as husband and wife for approximately nine years. Demetra availed herself of certain military privileges, including the benefit of the CHAMPUS insurance program. She was listed as a dependent on income tax returns which were filed jointly and they shared bank accounts. They held themselves out as husband and wife until Demetra became ill in January, 1990.
Demetra then sought legal assistance and filed her complaint for separate maintenance on October 2, 1991, claiming that George had separated from and abandoned her on June 2, 1991, without justifiable cause. Following a hearing conducted on July 14, 1992, the chancellor entered a decree ordering George to pay to Demetra separate maintenance in the amount of $2000 per month. George had been served with process and was actually present during the hearing, although he never advised the court of his presence. He did not enter an appearance, failed to file an answer to Demetra's complaint, and did nothing whatsoever to challenge her request for separate maintenance. George's presence at the hearing was specifically noted on the record.
*35 On August 12, 1992, George filed a motion to amend or alter the decree, claiming that numbers relied upon by the chancellor to determine George's income were inaccurate and inflated. On September 28, 1992, George filed a motion pursuant to M.R.C.P. 60(b) to set aside the judgment awarding separate maintenance, asserting for the first time that his marriage to Demetra was void. See Miss. Code Ann. § 93-1-1 (1972). Demetra responded by raising the defense of "equitable estoppel," claiming it would violate principles of equity to permit George to abandon his wife of nine years without incurring some legal responsibility, particularly since she was in poor health, living in low-income housing and dependent upon social security disability income.
Following a hearing at which both parties testified, the chancellor sustained George's motion to set aside the judgment awarding Demetra separate maintenance. In his written ruling issued on November 20, 1992, the chancellor found as fact and concluded as a matter of law that (1) the marriage was void under the statutory law of North Carolina and Mississippi; (2) both husband and wife knew or should have known that the statutes in North Carolina and Mississippi prohibited the marriage; (3) both husband and wife were in pari delicto; and (4) no rights of children or other third parties were affected.
Demetra argues on appeal that the chancellor erred in (1) declaring the parties' marriage void; (2) granting George's motion to set aside judgment; (3) refusing to find that George was equitably estopped from claiming a void marriage; and (4) finding the parties in pari delicto to the extent that Demetra could not avail herself of the theory of equitable estoppel.

II.

A.
Although Demetra raises the issue of whether the chancellor erred in declaring the parties' marriage void, she does not actually argue that her marriage to George is not void. The statutory laws in both North Carolina and Mississippi declare the marriage of the parties void. Miss. Code Ann. § 93-1-1 (1972) reads, in pertinent part:
the son shall not marry ... his aunt, being his father's or mother's sister ... and the like prohibition shall extend to females in the same degrees. All marriages prohibited by this section are incestuous and void.
The North Carolina statute provides a similar prohibition. See N.C. Gen. Stat. § 51-3 (1994). Accordingly, we find no error here.

B.
Demetra next asserts that the chancellor erred in granting George's motion to reconsider. We disagree. Pertinent portions of Rule 60(b), Mississippi Rules of Civil Procedure, read as follows:
(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(6) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time... .
Unless the judgment at issue is void, whether to grant an M.R.C.P. 60(b) motion is left to the trial court's discretion. Sartain v. White, 588 So.2d 204, 211 (Miss. 1991).
George's motion for relief from judgment did not specify any sub-part of Rule 60(b). It merely asked the court to set aside the judgment of separate maintenance and asserted that the parties' marriage was void pursuant to both North Carolina and Mississippi laws.
Demetra claims the 60(b) motion was not timely. The chancellor, however, awarded separate maintenance on July 14, 1992, and the motion was filed on September 25, 1992, after the chancellor, on September 17, 1992, had held the proceedings in abeyance for ten (10) days. The motion was made "within a reasonable time" as required by Rule 60(b). Nonetheless, there was a reason justifying relief from the judgment of separate maintenance, to wit: the chancellor learned that there had been no valid marriage.
*36 In Aldridge v. Aldridge, 116 Miss. 385, 397, 77 So. 150 (1918), this Court, citing Reed v. Reed, 85 Miss. 126, 37 So. 642 (1904), held that where there has been no valid marriage from the inception, there is no foundation for the wife's right to alimony. The Reed opinion states that "[i]t would be monstrous that the law should require payment of alimony pendente lite to one who clearly never was a wife." Reed, 85 Miss. at 128, 37 So. at 642. "`Alimony' and `maintenance' are merely different words used in differing situations to describe the same thing ... the measure of the husband's duty to support." Weiss v. Weiss, 579 So.2d 539, 542 (Miss. 1991), quoting Noel v. Noel, 15 N.J. Misc. 576, 193 A. 558, 560 (1937). Thus, the chancellor properly set aside the separate maintenance agreement since such support is appropriate only where there has been a valid marriage.
In Davis v. Davis, 643 So.2d 931 (Miss. 1994), wherein we denied Elvis Davis' request for an accounting of assets and equitable distribution, we noted that because the legislature had not seen fit to make provisions for "palimony," it was not the role of this Court to do so. In that case, Elvis and Travis Davis had held themselves out as husband and wife nearly thirteen years without the benefit of marriage and had one child. Because the parties had not entered into a ceremonial marriage, Elvis was not an innocent partner to a void marriage and there was no evidence that she had contributed to the acquisition of the assets she sought, we denied the relief she sought. Davis, 643 So.2d at 936.

C.
Given her physical infirmities and financial hardships, Demetra contends that George should not be allowed to walk out on her after nine years of "marriage" without any obligation; rather, principles of equity entitle her to some relief. She asserts that the doctrine of equitable estoppel should preclude both George and the chancellor from claiming that the marriage is void.
The issue upon which Demetra seeks to benefit from the doctrine of estoppel is one of law  whether her marriage to George is valid under statutory law. In Mississippi Power & Light Company v. Pitts, 181 Miss. 344, 179 So. 363, 365 (Miss. 1938), this Court stated:
The doctrine of estoppel is not available, because that doctrine has reference to factual matters, and not to contentions upon the law as applied to a given state of facts. There can be no estoppel where both parties were equally in possession of all the facts pertaining to the matter relied on as an estoppel, and the position taken in respect thereto involved solely a question of law. [emphasis supplied]
The chancellor was not manifestly wrong in ruling that Demetra and George were in pari delicto. According to Demetra and George, both parties knew of the familial relationship. Both had an equal opportunity to investigate the legality of their proposed marriage.
Demetra testified that she didn't care about Louisiana law and did not research Louisiana law; George did not research North Carolina law; and neither Demetra nor George researched Mississippi law. Demetra also testified that she and George were never worried about the state laws and that she made no attempt to find out about North Carolina law because she was unconcerned. Demetra, however, had serious concerns about any religious impediments. She consulted with the pastor and deacons in her church in order to determine whether or not the marriage to her uncle was proper under God's law.
George obviously had some question about the legal aspect of the couple's marriage because he testified that he had telephoned a "clerk" in North Carolina and inquired if he and Demetra could be married. The reply upon which George relied was: "Well, I guess." George told Demetra it was "okay" to marry based upon what he had learned from the clerk. At the time the parties applied for the marriage license, it appears they were still uncertain about the legality of the marriage because they declined to provide Demetra's mother's maiden name. George says this was because they feared their familial relationship would be discovered. Demetra claims she listed her mother's current married name because that was her *37 name at the time the application was completed. George further testified that following the marriage, he and Demetra frequently asked themselves: "Why do we not tell anybody that we are niece and uncle if it's nothing wrong with it?"
Having heard the testimony of both parties, the chancellor found they stood on equal footing. Both parties had equal access to the salient facts and both had ample opportunity to investigate the legality of the marriage.
In Crooker v. Hollingsworth, 210 Miss. 636, 46 So.2d 541, 544 (Miss. 1950), this Court relied upon the following well-recognized rule of equitable estoppel:
In the absence of extremely persuasive circumstances, courts will not give effect to an estoppel where the parties are equally well informed as to the essential facts, or where the means of knowledge were equally open to them.
See also Buchanan v. Stinson, 335 So.2d 912, 913, 914 (Miss. 1976).
Equitable estoppel is not available where, as here, the issue concerns a matter of law, the parties have equal access to all the facts, and public policy prevents the validation of a void marriage by the doctrine of estoppel. The chancellor did not err in rejecting the doctrine of equitable estoppel to validate a void marriage nor in finding George and Demetra in pari delicto.

III.
We therefore affirm the chancellor's determination that the marriage is void and his grant of George's M.R.C.P. 60(b) motion setting aside the award of separate maintenance. We further affirm his determinations that the doctrine of equitable estoppel is not applicable as well as that the parties were in pari delicto.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
PRATHER, P.J., dissents with separate written opinion joined by BANKS, J.
PRATHER, Presiding Justice, dissenting:

I. INTRODUCTION
I agree with the majority regarding the chancellor's determination that the marriage is void as well as his conclusion that the doctrine of equitable estoppel does not validate this marriage. I am further in agreement with the majority regarding the chancellor's determination that the parties were in pari delicto and the grant of George's M.R.C.P. 60(b) motion setting aside the judgment awarding separate maintenance to Demetra. However, over a period of nine (9) years Demetra and George, through their joint efforts, have in all likelihood accumulated real or personal property. I would, therefore, follow judicial precedent and remand this case for an equitable division of any real or personal property accumulated through the joint efforts of the parties during their partnership.

II. JUDICIAL PRECEDENT FOR EQUITABLE DIVISION
Aldridge v. Aldridge, 116 Miss. 385, 397, 77 So. 150, 150 (1918), held that where there has been no valid marriage from the inception, there is no foundation for the wife's right to alimony. In Taylor v. Taylor, 317 So.2d 422 (Miss. 1975), this Court recognized that Aldridge is sound law and announced the intent not to erode its force. Nevertheless, this Court upheld the chancellor's award of $75 per month for a period of 36 months to a wife who was sick and unable to work, even though there had never been a valid marriage between the parties, because the wife's previous marriage had not been dissolved by death or divorce, and the wife had knowingly entered into a bigamous marriage. The chancellor had allowed the $75 for support; it was not designated as alimony.
In upholding the chancellor's award in Taylor, this Court noted that the separation had "cast [the wife] adrift just as surely as if she had been [a] lawful wife" and that the chancellor had decided "that the strict letter of the law ought not to require him to ignore that he was dealing with human beings." Taylor, 317 So.2d at 423. This Court found the award "manifestly just" given the particular circumstances and declined to reverse *38 the award. This Court subsequently explained that Taylor was affirmed because the award of monthly support payments for a fixed period of time was a means of effecting a division of jointly accumulated property. Pickens v. Pickens, 490 So.2d 872, 875 (1986).
This Court has long sanctioned equitable divisions of property accumulated by the joint efforts of non-married cohabiting parties, incident to a permanent separation.[1]Pickens, 490 So.2d at 875; Chrismond v. Chrismond, 211 Miss. 746, 757-59, 52 So.2d 624, 629 (1951), cert. denied, 342 U.S. 878, 72 S.Ct. 167, 96 L.Ed. 659 (1951). See also Williams v. Mason, 556 So.2d 1045, 1049 (Miss. 1990). This Court, in Pickens, likened the permanent separation of a non-married cohabiting couple to the dissolution of a common law business partnership. Pickens, 490 So.2d at 875. In making such a division of property the chancellor should consider cash, services, and in kind contributions to the accumulation of property. Pickens, 490 So.2d at 876.
Although this Court recently declined an invitation to follow Pickens and Chrismond, in Davis v. Davis, 643 So.2d 931 (Miss. 1994), the facts and circumstances of the parties in Davis were sufficiently distinguished that Pickens and Chrismond maintain their precedential value. In Davis, there had never been a ceremonial marriage. In fact, Elvis Davis had refused Travis Davis' proposal of marriage. Additionally, Travis Davis left Elvis Davis with the house of her choice, remodeled and furnished, a new vehicle, and $20,000.00 in savings, although Elvis was healthy and had returned to the work force following the separation.
In the case at bar, contrary to Davis, there was a ceremonial marriage. Since the separation of the parties, Demetra's sole source of income is $496 per month in social security disability income while her monthly expenses exceed $2000; her medication alone costs $490 each month. Because of her illness, Demetra cannot work and has not worked since January of 1990. She has sold personal possessions to cover her expenses while George enjoys a monthly income of $4,400-$5,400. Demetra lives in low income federal housing for which she pays $260 a month. She has been eligible for, and has received, food stamps in the recent past. Demetra is not capable of caring for herself, either physically or financially. These facts are sufficiently distinguishable from those in Davis that the still vital reasoning of Pickens, Chrismond, and Taylor should apply here.

III. CONCLUSION
In the case sub judice, as in Taylor, the chancellor was presented with a void marriage, knowingly entered into by the wife, who is in dire financial straits because she is sick and unable to work. Given the length of their "partnership," Demetra and George have likely accumulated real and/or personal property through their joint efforts. While the judgment awarding separate maintenance, a term applicable only to valid marriage relationships, was correctly set aside on the M.R.C.P. 60(b) motion, the chancellor should have, in my view, made an award of support for Demetra as a means of effecting an equitable division of any jointly acquired property. Accordingly, I would reverse and remand for the chancery court to ascertain accumulation of assets based on the parties' partnership and to equitably distribute any such property, which could be effected by an order of monthly payments for a fixed period of time or a lump sum award.
BANKS, J., joins this opinion.
NOTES
[1] Other states have also allowed equitable distribution of property upon the permanent separation of non-married cohabiting couples. See Splawn v. Splawn, 429 S.E.2d 805 (S.C. 1993) (found bigamous marriage void ab initio yet applied equitable distribution statute to allow for division of parties' property); Rance v. Rance, 587 N.E.2d 150 (Ind. App. 1992) (denied "wife" of bigamist entitlement to statutory remedies unique to a spouse, but allowed equitable division of property acquired through the joint efforts of the parties); In re Thomas, 16 Kan. App.2d 518, 825 P.2d 1163 (1992) (allowed equitable division of property jointly accumulated by cohabiting unmarried parties or acquired by either party with the intent each should have an interest therein).