# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00525-SCT

*G. B. "BOOTS" SMITH CORPORATION*

*v.*

*HENRY R. COBB, JR. AND RICHARD COBB*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/5/2002 |
| TRIAL JUDGE: | HON. WILLIAM G. WILLARD, JR. |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | TOM T. ROSS, JR. |
| ATTORNEY FOR APPELLEES: | C. KENT HANEY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 10/30/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     Henry R. Cobb, Jr., and Richard Cobb filed suit in the Chancery Court of Coahoma County, Mississippi, against G. B. "Boots" Smith Corporation for damages resulting from an alleged breach of contract.  After a bench trial, judgment was entered against Smith.

## FACTS

¶2.     Smith is a Mississippi corporation engaged in, among other things, the road construction business. Smith entered into a contract with the State of Mississippi to construct a bypass on U.S. Highway 61 in Coahoma County.  The completion of this contract would require Smith to purchase a large amount of fill

dirt. Smith entered into a contract with the Cobbs as follows: "The Sellers (the Cobbs) hereby sell to Buyer (Smith) all fill dirt for Project No. SDP-009-4(34) on Highway 61 Bypass South from the Sunflower River West to the end of said project, in Coahoma County, Mississippi." The contract further stated that the quantity of fill dirt needed would be approximately 550,000 cubic yards, and that Smith would purchase the fill dirt at the rate of $.40 per cubic yard.

¶3. After Smith had removed 443,716.30 cubic yards from the Cobbs' property, it began purchasing fill dirt from a third party. When the Cobbs discovered that Smith was acquiring fill dirt elsewhere, they filed suit alleging that the contract required Smith to purchase all fill dirt for the project solely from the Cobbs.

¶4. The chancery court found that, as a matter of law, the contract was unambiguous, was a mutual contract between the parties, required the Cobbs to provide all the fill dirt for the project, and required Smith to purchase all fill dirt for the project from the Cobbs. The chancery court then allowed the parties to put on testimony as to the amount of damages that the Cobbs suffered as a result of Smith's breach of contract.

¶5. The chancery court awarded $105,134.80, which is the contractual value of the amount of fill dirt used on the project that was not purchased from the Cobbs at $.40 per cubic yard. The chancery court further found that, because Smith was receiving monthly checks from the State of Mississippi for supplies for the project, Smith was considered a contractor, and the Cobbs were considered subcontractors, a fifteen percent (15%) damages penalty pursuant to Miss. Code Ann. § 31-5-27 (Rev. 2000) should be imposed against Smith. The total judgment entered against Smith was for $120,905.02. Smith appeals.

**DISCUSSION**

¶6. We will not interfere with or disturb a chancellor's findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Pilgrim Rest Missionary Baptist Church ex rel. Bd. of Deacons v. Wallace,* 835 So.2d 67, 71 (Miss. 2003). Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder. *Parkerson v. Smith,* 817 So. 2d 529, 532 (Miss. 2002); *Miss. State Hwy. Comm'n v. Patterson Enters., Ltd.,* 627 So. 2d 261, 263 (Miss. 1993). The standard of review for questions of law is de novo. *Parkerson,* 817 So. 2d at 532; *Starcher v. Byrne,* 687 So. 2d 737, 739 (Miss. 1997).

**I.   WHETHER THE CHANCERY COURT ERRED IN FINDING THAT THE CONTRACT BETWEEN SMITH AND THE COBBS REQUIRED SMITH TO PURCHASE FILL DIRT SOLELY FROM THE COBBS.**

¶7. "In contract construction cases a court's focus is upon the objective fact -- the language of the contract. [A reviewing court] is concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." *Turner v. Terry,* 799 So. 2d 25, 32 (Miss. 2001); *Osborne v. Bullins,* 549 So. 2d 1337, 1339 (Miss. 1989). Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner,* 799 So. 2d at 32; *Cherry v. Anthony,* 501 So. 2d 416, 419 (Miss. 1987).

¶8. Here, Smith filed a motion in limine to prevent any parol evidence that would add terms to the contract upon which this suit was based. Smith, in essence, requested that the chancellor make his findings on the face of the contract alone. The chancellor then found that the contract was clear and unambiguous

3

on its face and that he did not need to go beyond the text by having the parties testify to what was meant by the contract.

¶9. The Cobbs contend that the contract meant that they would sell all the fill dirt needed for the project to Smith and that Smith would buy all the fill dirt needed for the project exclusively from them. This type of contract is called a "requirements contract." A requirements contract requires the buyer to purchase all his "requirements" for goods or services solely from one seller. Requirements contracts are recognized in Mississippi and are not void for indefiniteness. Miss. Code Ann. § 75-2-306(1) (Rev. 2002). "An essential element of a requirements contract is the promise of the buyer to purchase exclusively from the seller either the buyer's entire requirements or up to a specified amount." ***Mid-South Packers, Inc. v. Shoney's, Inc.*** 761 F.2d 1117, 1120 (5th Cir. 1985) (applying Mississippi law).

¶10. A Missouri federal court has found that

> an express promise by the buyer to purchase exclusively from the seller is not always required. In construing a contract in which only the seller has agreed to sell, a court may find an implied reciprocal promise on the part of the buyer to purchase exclusively from the seller, at least when it is apparent that a binding contract was intended.

***Propane Indus., Inc. v. Gen. Motors Corp.,*** 429 F. Supp. 214, 219 (W.D. Mo. 1977). "Thus there is no requirements agreement where the buyer fails to make an express or implied promise to purchase solely from the seller." 67A Am. Jur. 2d *Sales* § 225, at 394 (2003) (footnote omitted). Had the formation of a requirements contract called for an express promise to purchase solely from the seller, then the contract at issue here would not be a requirements contract. The plain language of the contract provides an implied contract. While the contract does not contain the phrase "buyers agree to buy all fill dirt for the Project," the wording that was used in the contract implied exactly that. There would be no

4

reason to include the wording "all fill dirt for project" unless Smith intended to buy all the fill dirt needed for the project from these particular sellers.

¶11. The chancellor reviewed the contract and, from the words in the contract alone, found that it was clear and unambiguous on its face and that it was a requirements contract. We agree.

## II. WHETHER DAMAGES WERE APPROPRIATE IN LIGHT OF THIS COURT'S FINDING IN ISSUE I.

¶12. After he found that Smith was required to purchase all fill dirt for the project from the Cobbs, the chancellor awarded damages to the Cobbs based on the amount of fill dirt purchased by Smith from third parties. Based on the parties' testimony, the chancellor determined the amount of fill dirt needed for the project to be 706,553.3 cubic yards. He then found that the 262,837 cubic yards of dirt not purchased from the Cobbs[1] multiplied by $0.40 per yard, the stated contract price, was the measure of damages and awarded such to the Cobbs.

¶13. Smith claims that the chancellor abused his discretion in awarding damages for the 262,837 cubic yards of dirt not purchased from the Cobbs, since the contract estimated the amount of dirt needed for the project to be 550,000 cubic yards. Smith contends that the chancellor's award of damages essentially requires him to purchase 23% more dirt than anticipated under the contract which is unreasonably disproportionate to the stated estimate in the contract.

¶14. Smith relies on Miss. Code Ann. § 75-2-306 (1) (Rev. 2002), which states in part as follows:

> A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate . . . may be tendered or demanded.

---

[1]But that should have been pursuant to the terms of the parties' contract.

¶15.    Smith contends that the "unreasonably disproportionate" language refers to the volume of goods to be purchased under a requirements contract, not to damages for breach of a requirements contract. Smith incorrectly interprets the statute, which clearly refers to the terms of a contract and the performance of the contract. *See, e.g., Chem. Distribs., Inc. v. Exxon Corp.*, 1 F.3d 1478, 1483 (5th Cir. 1993).

¶16.    Although Smith's argument is without merit, we find that the chancellor's award of damages was clearly erroneous. The principle governing breaches of sales contracts is to give the aggrieved party the benefit of the contract by putting the party in as good a position as the party would have been in had the breaching party performed the agreement. The appropriate measure of damages is found in Miss. Code Ann. § 75-2-708 (Rev. 2002), "Seller's damages for nonacceptance of goods or repudiation of the sales contract." *See, e.g., Chem. Distribs.*, 1 F.3d at 1486. Subsection (1) provides for damages equal to the difference between the agreed price and the market value of the goods. If subsection (1)'s damages are inadequate, subsection (2)'s measure of damages, "the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages," applies. The chancellor awarded the Cobbs the full sales price as damages. Because the Cobbs are still in possession of the dirt they were to sell and presumably could still sell, they are entitled only to the lost profits and any incidental damages under § 75-2-708.

¶17.    Presiding Justice McRae, in his separate opinion, argues that the chancellor's calculation of damages was correct and should be affirmed. Use of this calculation, however, would result in unjust enrichment because the Cobbs would receive lost profits and still be in possession of the fill dirt, which they could sell to another purchaser. The Cobbs would be paid almost double what the fill dirt was worth in the first place, making Presiding Justice McRae's calculation of damages highly inequitable and contrary to well-established law.

6

¶18. We reverse the chancellor's award of damages and remand this case for a recalculation of damages under these guidelines.

### III. WHETHER A STATUTORY PENALTY SHOULD HAVE BEEN IMPOSED AGAINST SMITH.

¶19. The chancellor also imposed Miss. Code Ann. § 31-5-27's penalty against Smith. This statute contemplates payment by contractors to suppliers and subcontractors while work is ongoing. When the contractor receives payment, the contractor shall "pay each subcontractor and material supplier in proportion to the percentage of work completed by each subcontractor and material supplier." Miss. Code Ann. § 31-5-27 (Rev. 2000). When Smith breached the contract, the contract was terminated, and the Cobbs were no longer entitled to the benefits under the contract. *See, e.g,* Restatement (Second) Contracts § 253 (a material breach by either party terminates a contract); *see also **Estate of Reaves v. Owen***, 744 So. 2d 799, 802 (Miss. Ct. App. 1999). Therefore, after the breach, the Cobbs were no longer material suppliers under the public construction contract, and § 31-5-27 no longer applied to them. Their only recourse at that time was to file a breach of contract suit against Smith. ¶20. Thus, the chancellor's imposition of the statutory penalty against Smith was erroneous.

### CONCLUSION

¶21. The chancellor correctly found that the contract was clear and unambiguous on its face, and through its wording, required Smith to purchase fill dirt solely from the Cobbs. In failing to do so, Smith breached the contract. However, the chancellor erroneously awarded the Cobbs the full purchase price of the unused fill dirt instead of only the profits they may have reaped from the sale of the fill dirt. The chancellor also erroneously awarded a statutory penalty.

¶22. We therefore affirm the chancellor's finding that the contract was a requirements contract, reverse and render the imposition of the statutory penalty, and reverse the award of damages and remand for a reassessment of damages in accordance with this opinion.

¶23. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

**SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. PITTMAN, C.J., AND DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶24. As for the merits, the majority correctly finds that this is a requirements contract that was breached by Smith, I agree. However, the majority errs when it orders reversal as to the issue of damages in favor of reassessment in the trial court below. The chancellor correctly assessed damages, and his ruling should be affirmed. This case was Justice Diaz's case in which practically everyone voted when it originally circulated affirming in its entirety the learned chancellor's decision. I agree with Justice Diaz's original proposed opinion and hereby adopt those portions of his proposed opinion hereby recited in its entirety below since now the majority sees fit to reverse. [2]

---

[2] **II. WHETHER DAMAGES WERE APPROPRIATE IN LIGHT OF THIS COURT'S FINDING IN ISSUE I.**

Smith argues, in the event the Chancellor's decision was supported by the applicable law and the contract was a requirements contract pursuant to Miss Code Ann. § 75-2-306(1), then he is not required to purchase any quantity unreasonably disproportionate to the stated estimate in the contract. The Chancellor found correctly that Smith was to purchase *all* fill dirt for the project from the Cobbs. The Chancellor then awarded damages based on the amount of fill dirt purchased by Smith from a third-party,

which should have been purchased from the Cobbs pursuant to the contract between said parties.

At trial, the Chancellor determined the amount of fill dirt needed for the project to be 706, 553.3 cubic yards. This determination was based upon testimony from Smith's own witness. The Chancellor found that the 262, 837 cubic yards of dirt not purchased from the Cobbs multiplied by $0.40 per yard, the stated contract price, was the obvious measure of damages, and awarded such to the Cobbs. Although the Chancellor did not reference Mississippi Code Annotated § 75-2-708 (Rev. 2002), "Seller's damages for nonacceptance of goods or repudiation of sales contract," his/her ruling appears to based thereon. This section provides in part, "(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this chapter . . ., due allowance for costs reasonably incurred and due credit for payments or proceeds of resale." The Chancellor awarded the Cobbs the profits they would have received had Smith fully performed under the contract, which is in accord with Miss. Code Ann. § 75-2-708(2). (Rev. 2002).

Smith claims that the Chancellor abused his discretion in awarding damages for the 262, 837 cubic yards of dirt not purchased from the Cobbs, since the contract estimated the amount of dirt needed for the project to be 550, 000 cubic yards. Smith contends that the Chancellor's award of damages essentially requires him to purchase 23% more dirt than anticipated under the contract which is unreasonably disproportionate to the stated estimate in the contract.

Smith relies on Miss. Code Ann. § 75-2-306 which states in part as follows:
A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate . . . may be tendered or demanded.

The "unreasonably disproportionate" language refers to the volume of goods to be purchased under a requirements contract, not to damages for breach of a requirements contract. *See e.g., Chemical Distributors, Inc. v. Exxon Corp.*, 1 F.3d 1478, 1483 (5th Cir. 1993). The damages awarded by the Chancellor do not actually require a tender or demand of a specific quantity of dirt, instead money damages were awarded for breach of contract.

Assuming, arguendo, that Smith's argument is not misplaced, we find the Chancellor did not abuse his discretion in awarding damages based on the amount of dirt which was necessary to complete the project. As previously stated, the contract provided that the Cobbs would supply all fill dirt to Smith and implied that Smith would purchase all fill dirt needed for the project from the Cobbs. Furthermore, the contract originally stated 700,000 cubic yards of dirt was the estimate needed to complete the project. A line marked through that figure and 550,000 was inserted instead. In addition, the pit permit

9

¶25. The contract specifically called for "all fill dirt for Project No. SDP -009-4 (34) on Highway 61 Bypass South from the Sunflower River West to the end of said project, in Coahoma County, Mississippi. " Another portion dealt with estimated amount and the Cobbs were entitled to the total amount of fill dirt that was used. Smith had the opportunity to get all the dirt and chose not to do so. Therefore, it suffers the consequences including the 15% penalty. For the majority to say the Cobbs were no longer suppliers as a result of the breach of the contract by Smith and entitle Smith to be rewarded for this breach of the contract is disingenuous. The Cobbs were suppliers, Smith was the subcontractor, and Miss. Code Ann. § 31-5-27 (Rev. 2000) applies as the learned chancellor found.

¶26. For the reasons stated above, I respectfully concur in part and dissent in part as I believe the chancellor's entire judgment should be affirmed on this appeal.

---

application prepared by Smith and filed with the State of Mississippi contained a form styled "Request for Cultural Assessment" which provided that 800,000 cubic yards of dirt would be acquired for the project. In light of all the evidence, the Chancellor did not abuse his discretion in requiring Smith to comply with the contract for which he bargained. Looking at the facts and circumstances of this case, the amount of dirt Smith was required to purchase by the Chancellor was not unreasonably disproportionate to the amount estimated by the parties.