744 So.2d 799 (1999)
The ESTATE OF Lawrence Eugene REAVES, Appellant,
v.
Walter OWEN, Appellee.
No. 98-CA-00095 COA.
Court of Appeals of Mississippi.
February 9, 1999.
*800 Thomas E. Royals, Cynthia A. Stewart, Jackson, Attorneys for Appellant.
Mary Marvel Fyke, Jackson, Attorney for Appellee.
BEFORE BRIDGES, C.J., DIAZ, PAYNE, AND SOUTHWICK, JJ.
DIAZ, J., for the Court:
¶ 1. This is an appeal from a judgment of the Hinds County Chancery Court establishing the validity of a claim against the estate of Lawrence E. Reaves in favor of Walter Owen. The executrix of the estate, Debra Thomas, has appealed the chancellor's decision to award to Owen the balance due on the $59,500 contract debt owed by Reaves's estate to Owen. Thomas raised the following issues in this appeal: (1) that the trial court erred in upholding a property settlement agreement entered into after the termination of a homosexual relationship, (2) that the trial court erred in upholding the property settlement agreement in light of the material breach of agreement by Owen, and (3) that the trial court erred in not allowing the estate to put on proof of the materiality of the breach of the property settlement agreement by Owen. Since the first and second issues are dispositive, we do not reach the merits of the final issue. Finding all of these assignments of error to be without merit, we affirm the chancellor's decision and also award statutory penalties and interest to the appellee.

FACTS
¶ 2. Walter Owen and Lawrence E. Reaves were involved in an admittedly homosexual *801 relationship for nine years. During an argument in the fall of 1995, Reaves stabbed Owen in the back with a knife. At this time, Reaves was terminally ill and suffering from AIDS.
¶ 3. On October 12, 1995, Owen entered into settlement negotiations with Reaves to obtain compensation for the damages suffered by him because of the knife wound. As part of the written contract, Reaves agreed to pay Owen fifty-nine thousand five hundred dollars ($59,500) with ten thousand dollars ($10,000) to be paid by January 1, 1996, and the rest to be paid in forty-five hundred dollar ($4500) increments for eleven months to start on November 1, 1995.
¶ 4. Owen was represented by attorney Jeff McKinney and Reaves was represented by attorney Tom Royals when the agreement was signed at Royals's office. The third paragraph of the agreement specifically set out provisions for Reaves's estate to continue the payments if Reaves did not live until the debt was paid. The remainder of the contract provided that Walter Owen was to return certain personal property, including a car and antiques; that Reaves and Owen were not to have any further contact with each other; that Owen not claim any right to any other personal property of Reaves; and that "each party agrees to release the other from all civil or criminal charges that may be pending or threatened at this time." In fact, no criminal charges had been pursued or brought by Owen.
¶ 5. Despite their agreement to the contrary, the testimony at the hearing was that both Reaves and Owen continued to consensually contact one another. Owen also conceded that he failed to return several items. However, he stated, that Reaves knew these items had been stolen from Owen and were no longer in Owen's possession. Although both Reaves and Thomas knew that Owen did not return the items, they continued to make monthly payments under the agreement until Reaves's death in January of 1996.
¶ 6. Upon Reaves's death, his estate ceased making payments to Owen despite the express provision in the contract between the parties to the contrary. After Reaves's estate was opened for probate, Owen filed his claim against the estate based upon the private contract entered between Reaves and himself. Thomas subsequently filed a petition to determine the validity of the claim alleging, inter alia, that the contract was the result of coercion on the part of Owen after an alleged incident stemming from a domestic dispute between the parties.
¶ 7. During the hearing, Thomas and the estate argued that the contract was unenforceable as against public policy because palimony is not recognized in Mississippi. After the hearing, the chancellor entered her order on the petition to determine the validity of the claim wherein she found no merit in the palimony argument nor was she persuaded by the estate's argument that the contract was unenforceable because of Owen's alleged breaches. Feeling aggrieved, Thomas filed this appeal on behalf of the estate.

STANDARD OF REVIEW
¶ 8. This Court applies a limited standard of review on appeals from chancery court. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). Therefore, we will not interfere with the chancellor's findings unless she was "manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990).

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN UPHOLDING A PROPERTY SETTLEMENT AGREEMENT ENTERED INTO AFTER THE TERMINATION OF A HOMOSEXUAL RELATIONSHIP
¶ 9. Contractual rights are fundamental, but contracts contrary to public policy are unenforceable. Lanier v. State, 635 So.2d 813, 816 (Miss.1994). Unless a *802 contract is illegal or against public policy, parties have the right to enter into contracts concerning their property and interests therein and the right to rely upon the mutually agreed upon terms and conditions of the contract. Koch v. H & S Development Co., 249 Miss. 590, 163 So.2d 710, 727 (1964). The written contract is more conclusive of the intention of the parties than the retrospective review afforded contracts by courts of equity. Id. A court of equity:
is bound by a contract as the parties have made it and has no authority to substitute for it another and different agreement, and should afford relief only where obviously there is fraud, real hardship, oppression, mistake, [and] unconscionable results....
Id. "The function of the courts is to enforce contracts rather than enable parties to escape their obligation upon the pretext of public policy." Smith v. Simon, 224 So.2d 565, 566 (Miss.1969).
¶ 10. Palimony gives unmarried persons a right to enforce a property division when the relationship dissolves. Davis v. Davis, 643 So.2d 931, 932 (Miss. 1994). However, palimony is not recognized in Mississippi since it is void as against public policy. Weeks v. Weeks, 654 So.2d 33, 36 (Miss.1995).
¶ 11. Despite numerous attempts by the appellant to characterize this matter as a domestic dispute between Owen and Reaves after their homosexual relationship ended, this Court views it as a matter of contract law. It is also notable that the pleadings did not characterize Owen's claim as one based on palimony or as a property settlement as Thomas now asserts on appeal. After the hearing, the chancellor stated in her order that the contract was not a result of fraud, real hardship, oppression, mistake, or other unconscionable act. Instead, this contract arose out of arms-length negotiation between these two parties who were represented by attorneys. The chancellor found that this contract was based upon a private contract and not the law of domestic relations. The chancellor further stated that the prohibition against same sex marriages does not preclude individuals in homosexual relationships from exercising their rights to privately commit by contract to spend their money and distribute their property as they wish. Additionally, no authority states that a contract between two unmarried persons is illegal. Therefore, no illegality can be shown from the face of the contract. At the hearing, the estate failed to clearly show illegality in the contract formation. Therefore, the law of this State does not support any finding of illegality with regard to this contract.

II. WHETHER THE TRIAL COURT ERRED IN UPHOLDING THE CONTRACT IN LIGHT OF THE MATERIAL BREACH OF AGREEMENT BY OWEN
¶ 12. Under Mississippi law, a material breach by either party terminates a contract. Restatement (Second) Contracts, § 253. However,
where a party, with knowledge of facts entitling him to recision of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm.
Williamson v. Metzger, 379 So.2d 1227, 1231 (Miss.1980).
¶ 13. Here, Owen admitted that he did not return all of the items which were delineated in the contract as his responsibility to return. However, testimony at the hearing showed that Reaves was aware that those items were no longer in Owen's possession and that he did not expect their return. More importantly, the testimony of Thomas coupled with the documentary evidence of the continued payments demonstrated an election to affirm the contract by Reaves even though Owen did not return his personal items. By continuing payments in light of the purported breach, *803 Reaves waived his right to assert breach as a defense to the contract. Therefore, this assignment of error is without merit.
¶ 14. Since 1857, Mississippi has imposed a mandatory penalty on parties who unsuccessfully appeal to the Mississippi Supreme Court. Miss. Rev.Code. Ch. 63, Art 12 (1857). Furthermore, by statute, appellants are required to be charged with 15% of the judgment if it is (1) a final judgment (2) of the type specified by the statute is (3) affirmed unconditionally (4) by the Mississippi Supreme Court. Miss.Code Ann. § 11-3-23 (Rev.1991). The statute expresses a bona fide interest in providing a measure of compensation for the successful appellee who has endured the rigors of successful appellate litigation. Walters v. Inexco Oil. Co., 440 So.2d 268, 274-75 (Miss.1983).
¶ 15. The statute is designed to discourage frivolous appeals and to provide compensation for the successful appellee. Here, Owen's claim was successfully validated against Reaves's estate in the chancery court. Instead of paying the balance due on the contract, the executrix tried to relitigate issues decided by the chancellor and raise new assignments of error in this appeal. The statute directs the imposition of penalties based upon the judgment or decree affirmed if it is monetary. Therefore, we impose a statutory penalty of 15% upon such sum.
¶ 16. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY PENALTIES AND INTEREST ARE AWARDED TO APPELLEE. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, IRVING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.
LEE, J., NOT PARTICIPATING.