881 So.2d 266 (2003)
Lori NICHOLS, Appellant
v.
David Wayne FUNDERBURK, Appellee.
No. 2002-CA-00087-COA.
Court of Appeals of Mississippi.
November 4, 2003.
Rehearing Denied March 9, 2004.
*267 Angela Newsom Snyder, attorney for appellant.
David Wayne Funderburk appellee, pro se.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. Lori Nichols filed a complaint for paternity, child support and an equitable division of property against David Wayne Funderburk. The chancellor entered a final judgment that declared David as the father of their two children, granted custody of the children and child support to Lori, restricted David's visitation with the children, and denied Lori's claim for an equitable division of property. From this judgment, Lori now appeals. We find no error and affirm.

FACTS
¶ 2. In 1987, Lori Nichols and David Funderburk met and began a romantic relationship. Lori was fourteen years old, and David was twenty-three years old. Approximately two years later, just before Lori turned sixteen, Lori and David began to live together. They continued their cohabitation through 2001. Although there *268 were promises and discussions about the subject, they were never married. David eventually made it clear that he would never marry Lori.
¶ 3. During their cohabitation, Lori and David had two children. Tonie Lee Funderburk was born on March 29, 1990, and Lori Alexis Funderburk was born on November 12, 1997. The chancellor decided the issues of paternity, custody, and child support, and none of these issues are contested on appeal. This appeal only considers the chancellor's decision to deny Lori an equitable division of property.
¶ 4. During the period of their cohabitation, David operated a restaurant and purchased an apartment complex from his parents. Lori was never an owner or partner in either of these businesses. Lori managed the restaurant and occasionally worked at the apartment complex. Lori was paid a weekly salary for her work at the restaurant.
¶ 5. David also purchased a residence in 1989. The deed to the residence conveyed record title to David and his mother as joint owners. David paid the monthly mortgage payment. David and Lori split the utility bills. Lori bought all the furniture for the house, the appliances, and other material such as paint and flooring to update the home. Lori's name was never added to or included in the property's record title. When she left the relationship, Lori took half of the furniture and left the residence.
¶ 6. The relationship and cohabitation of David and Lori ended in 2001. Lori then filed her complaint for paternity, child support and an equitable division of property. The chancellor's final judgment declared David to be the father of the two children and awarded primary custody to Lori with joint legal custody between both parents. The chancellor restricted David's visitation due to his questionable behavior. The chancellor ordered David to pay $425 per month in child support and provide health insurance for the children. Lori was awarded a $2,300 judgment for back child support. The chancellor denied Lori's claim for an equitable division of the property that was acquired during their cohabitation.
¶ 7. On appeal Lori makes three arguments. First, Lori argues the chancellor erred in denying her claim for an equitable division of the property acquired during her cohabitation with David. Second, Lori contends that since she was merely fourteen years old when her relationship with David began, she should be afforded some protection by the courts and that she should be awarded her fair share of the assets accumulated during their relationship. Finally, Lori claims that a constructive trust was established when she began contributing financial resources and domestic efforts to their businesses and residence.

STANDARD OF REVIEW
¶ 8. Our scope of review in domestic matters is limited. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Denson v. George, 642 So.2d 909, 913 (Miss.1994). This Court is not called upon or permitted to substitute its collective judgment for that of the chancellor. Richardson v. Riley, 355 So.2d 667, 668-69 (Miss.1978). A conclusion that we might have decided the case differently, standing alone, is not a basis to disturb the result. Id.

ANALYSIS
¶ 9. Our review begins with a threshold question. Does the fact that David, as the *269 appellee, failed to file a brief serve as a confession of error? In Barber v. Barber, 608 So.2d 1338, 1340 (Miss.1992), the Mississippi Supreme Court held:
In matters of child custody and support, however, in the absence of an appellee's brief, our practice is to make a special effort to review the record for support for affirmance. Sparkman v. Sparkman, 441 So.2d 1361 (Miss.1983); Garceau v. Roberts, 363 So.2d 249 (Miss.1979[1978]). While this matter does not involve custody or support directly, it does arise out of a suit wherein those issues are of concern and its resolution affects the economic balance between the non-custodial and the custodial parent. Accordingly, we review the record.
Here, just as in Barber, we will not accept the appellee's failure to file a brief as a confession of error, and we will review the record to determine whether an affirmance is proper.

I. Did the chancellor abuse her discretion by denying Lori an equitable division of property?

¶ 10. We begin our discussion with the principle that Mississippi law does not allow a claim for palimony. Aldridge v. Aldridge, 116 Miss. 385, 77 So. 150 (1918). Here, Lori contends that she does not seek an award of palimony, but rather claims she is entitled to an "equitable division of property." Lori argues that Pickens v. Pickens, 490 So.2d 872, 875 (Miss.1986), provides authority for her position.
¶ 11. Equitable division of property is a concept of our marital and domestic laws. A marital relationship may be created in conformity with Mississippi Code Annotated sections 93-1-1 through 93-1-25 (Rev.1994 and Supp.2002). Mere cohabitation does not vest marital rights. Pickens, 490 So.2d at 875.
¶ 12. In Ferguson v. Ferguson, 639 So.2d 921, 925 (Miss.1994), the Mississippi Supreme Court held:
This Court has "long recognized that, incident to a divorce, the chancery court has authority, where the equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties." Brown v. Brown, 574 So.2d 688, 690 (Miss.1990); Brendel v. Brendel, 566 So.2d 1269, 1273 (Miss.1990); Jones v. Jones, 532 So.2d 574, 580-581 (Miss.1988); Clark v. Clark, 293 So.2d 447, 450 (Miss.1974). With this opinion, this Court adopts guidelines for application of the equitable distribution method of division of marital property.
The key concept in the equitable division of property is that the property be "marital property" and that it be divided "incident to a divorce."
¶ 13. The ceremony of marriage is essential to the equitable division (i.e. the redistribution of ownership between former spouses) of property. An actual marriage is required. However, courts have carved out an exception and extended this concept where there was a marriage or some appearance of marriage. This exception has allowed the award of some type of division of property or payment of support, when no legal marriage actually existed. See Pickens v. Pickens, 490 So.2d 872, 875 (Miss.1986); Taylor v. Taylor, 317 So.2d 422, 423 (Miss.1975); Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624, 630 (1951); Wooldridge v. Wooldridge, 856 So.2d 446, 452 (¶ 16) (Miss.Ct.App.2003). However, in each of these cases, the couples had all either been married or contended to have married. Here, Lori and David never married or purported to have married.
¶ 14. In Pickens, Norma Jean and Robert Pickens were married in 1948. Pickens, *270 490 So.2d at 873. They divorced in 1962, but resumed living together in 1963 without remarrying. Id. When Mr. Pickens retired in 1983, the couple separated permanently. Id. The chancellor divided the property to represent the economic contributions by each party toward the joint accumulation of property between them. Id. at 875. Observing that Mrs. Pickens had worked outside of the home for twenty years and taken care of the household, the supreme court affirmed and held that:
Where parties such as these live together in what must at least be acknowledged to be a partnership and where, through their joint efforts, real property or personal property, or both, are accumulated, an equitable division of such property will be ordered upon the permanent breakup and separation.
Id. at 875-76. Lori argues that like the couple in Pickens, she and David had a partnership and accumulated real and personal property through their joint efforts, and she is therefore entitled to equitable division of these assets.
¶ 15. In Taylor, the couple entered into a marriage knowing the putative wife had not divorced her first husband and lived together as man and wife for eighteen years. Taylor, 317 So.2d at 422. Upon their separation, the court found equity required the man to "support" his putative wife for a period of thirty-six months. Id. Granting of monthly support for a limited period of time is not the same as equitable division of property, jointly gained through the efforts of the parties during the relationship.
¶ 16. Lori contends that the chancellor applied the wrong legal standard by relying on Davis v. Davis, 643 So.2d 931 (Miss.1994). Lori contends that Davis held that the plaintiff was not entitled to equitable division based on her domestic contributions alone. Id. at 936. Lori asserts that, unlike the plaintiff in Davis, she did not seek equitable division of property for compensation, payment of monies or division of assets on the basis that she "rendered services" during their cohabitation. Instead, Lori claims she sought a division of property based on her financial contribution. Lori cites to numerous jobs she held throughout her relationship with David, including her participation in the management of David's restaurant and his apartments to support this contention. She also claims that the improvements she made to the home were a financial contribution.
¶ 17. The chancellor considered the claims presented, the appropriate legal precedent, and concluded that there were simply no facts to support a finding that Lori and David entered a partnership or acquired assets through their joint efforts. The chancellor looked at when the assets were acquired, how they were titled, when they were sold, and whether property acquired through any implied partnership remained to be distributed. The chancellor's opinion that no jointly acquired assets existed was supported by the facts from the record. Under our standard of review, there was no clear error in the chancellor's finding.
¶ 18. The dissent would reverse and remand to the chancellor to equitably divide the equity in the residence and the net proceeds from the sale of the restaurant. To reach this result, the dissent ignores the findings made by the chancellor.
¶ 19. The dissent tries to distinguish this case from Davis. The dissent claims that Davis is not applicable because Elvis Davis did not contribute to Travis Davis's "business ventures in any way, nor did Elvis prove the existence of a business partnership agreement or that any of Travis's *271 assets were jointly accumulated." However, the author of the dissent here also wrote for the Court in Wooldridge v. Wooldridge, 856 So.2d 446, 452 (¶ 16) (Miss.Ct.App.2003), where he described and quoted from the holding of Davis:
Further, the supreme court distinguished the facts in Davis from those in Pickens, Taylor and Chrismond by finding that the Davises were never ceremonially married, nor was Elvis an innocent partner to a void marriage; to the contrary, Elvis rejected Travis's proposal of marriage. Davis, 643 So.2d at 936. In its conclusion, the supreme court stated:
When opportunity knocks, one must answer its call. Elvis Davis failed to do so and thus her claim is all for naught. Our legislature has not extended the rights enjoyed by married people to those who choose merely to cohabit. To the contrary, cohabitation is still prohibited by statute. Elvis was well-compensated during and after the relationship. We see no reason to advocate any form of "palimony" when the legislature has not so spoken. Id.

¶ 20. We find that Lori and David's relationship was comparable to that of Elvis and Travis Davis. Lori and David chose "merely to cohabit." They were never married or purported to be married. Lori is not entitled to any type of equitable distribution of property or palimony under Mississippi law.
¶ 21. The crux of the dissent's position is that Lori was a "substantial contributor to the accumulation of assets with David such that she should receive an equitable share of those assets." There was ample evidence that Lori was paid for her services. This payment is in contrast to that of an owner who is not paid a wage or a salary but must draw from the net profits. The question is ownership of assets, not who ran or managed the business. Clearly, David owned the restaurant and apartment complex, and Lori had absolutely no ownership interest in either asset.
¶ 22. The chancellor concluded that "the evidence does not support the contention that the parties acquired property through their `joint efforts.'" Substantial evidence existed to support this holding. Lori and David chose to cohabit without the benefit of marriage. Lori's name was never included in or added to the title of the home owned by David, nor was she ever made a partner in the restaurant. Lori was paid a wage for her services as an employee at the restaurant. We find the chancellor properly considered and rejected Lori's claims for equitable division of these properties. We find no error and affirm.

II. Whether Lori is entitled to any protection by the Courts because of her minority upon entering the cohabitation relationship.

¶ 23. Lori next contends that her minority at the time she began her relationship and cohabitation with David obligates courts of this State to protect her. Lori argues that Hays v. Lafayette County Sch. Dist., 759 So.2d 1144 (Miss.1999), supports her position and points to the following language:
Because minors need protection, this Court treats them as disabled in a fashion equal to the disability of those suffering from unsound mind. We sanction those who willfully contribute to their delinquency, Miss.Code Ann. § 43-23-25, and alter the names of minors in court proceedings to protect their anonymity. Amacker v. State, 676 So.2d 909 (Miss.1996).

*272 We have been explicit in our intent to protect minors holding that the disabilities of infancy are in fact personal privileges conferred on infants by law, and as such they constitute limitations on the legal capacity of infants, not to defeat their rights, but to shield and protect them from the acts of their own improvidence as well as from acts of others. Mississippi State Bar Ass'n v. Moyo, 525 So.2d 1289, 1293 (Miss.1988).
Hays, 759 So.2d at 1148 (¶¶ 28-29).
¶ 24. First, we note the language quoted by Lori comes from the dissent. Second, Hays offers no authority for the facts we encounter in this case. In Hays, a child was injured on a public school bus. Id. at 1143(¶ 2). The child's parent filed suit two years after the incident. Id. The supreme court held that the one-year statute of limitations under the Mississippi Tort Claims Act was not tolled by the minor savings clause. Id. at 1148 (¶ 19). There is no correlation between the facts and law in Hays and the facts and law in this case. Hays is simply not applicable.
¶ 25. We are certainly sympathetic with Lori's plight and the fact that she entered this relationship when she was yet a mere child. However, this action was not brought during Lori's minority or within three years thereafter. Mississippi Code Annotated section 15-1-59 (Rev.2003) specifically provides a savings clause for minors, tolling the applicable statutes of limitation until the child reaches the age of majority. Here, Lori waited until she was twenty-seven years old to seek the aid or protection of the courts. This was well after she reached the age of majority and not within the three year statute of limitations for any claim she may have had.
¶ 26. Our decision in this matter is also guided by the fact that, upon reaching the age of majority and remaining in the non-marital, cohabitation relationship, Lori thereby accepted and, arguably, ratified the acts that occurred during her minority. Furthermore, Lori became involved with the restaurant and apartments well after she reached the age of majority. David purchased the restaurant in 1997 when Lori was twenty-three years old. The apartments were purchased in 1999 when Lori was twenty-five years old. Lori was not a minor when she assisted David with these businesses. She cannot now plead that, because of her minority when she entered the relationship, she deserves the court's protection and division of assets that were acquired after she became an adult.
¶ 27. We find that because Lori waited until the age of twenty-seven to bring this action against David, she is afforded no protection under the law as a minor. We therefore affirm the decision of the chancellor.

III. Whether a constructive trust was established when Lori began contributing financial resources and domestic efforts to their businesses and home.

¶ 28. Lori argues that because she worked and contributed to all of the businesses and the home, David held these properties in a constructive trust for her. In determining whether a constructive or resulting trust exists, the courts generally apply a standard set forth concisely in Russell v. Douglas, 243 Miss. 497, 505-6, 138 So.2d 730, 734 (1962):
A constructive trust is a fiction of equity. It is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that a holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. The equity must shape the relief and courts are *273 bound by no unyielding formula.... It arises regardless of intention or agreement, express or implied.... The trust is raised by implication of law. Fraud need not be shown.
(citations omitted).
¶ 29. A constructive trust will generally be raised "where, at the time the promise is made, the grantee does not intend to perform it, or it is intentionally false, or where confidential relationships exist between the parties and there is no other consideration for the conveyance except the promise, or where the promise is the inducing cause of the conveyance, no other consideration being given, and is relied on by the grantor." Griffin v. Armana, 687 So.2d 1188, 1195 (Miss.1996). Clear and convincing proof is necessary to establish a resulting or constructive trust. Allgood v. Allgood, 473 So.2d 416, 421 (Miss.1985).
¶ 30. In this case, Lori failed to offer clear and convincing evidence of a constructive trust. The chancellor found David to be the legal owner of title on all the property in question. Although there was testimony that David promised to marry Lori, the record does not support that he ever promised to convey any ownership interest in these properties. A constructive trust was not established, and Lori is not now entitled to division of the property under this theory.
¶ 31. THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., AND SOUTHWICK, P.J., IRVING, AND CHANDLER, JJ., CONCUR. BRIDGES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, J., IN PART. LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., THOMAS AND MYERS, JJ. BRIDGES, J., JOINS THIS SEPARATE OPINION IN PART.
BRIDGES, J., CONCURRING IN PART, DISSENTING IN PART:
¶ 32. In this separate opinion I concur with the majority on the second and third issues of this appeal that Nichols should not be afforded protection by her minority status and that no constructive trust was formed by and through their relationship with each other. However, I join with Judge Lee's dissent on the first issue of this appeal that Nichols is entitled to an equitable division of the couple's property. I would, however, like to emphasize a substantial injustice present in Mississippi domestic relations law that neither opinion addressed in the hope of its further review by the Mississippi Supreme Court.
¶ 33. Ms. Nichols lived with Mr. Funderburk for approximately twelve years without formalizing their relationship through marriage. During that time she bore him two children that will forever bear the stigma of bastardization. She also performed all the household duties of a wife and paid for a significant amount of the household expenses and improvement with her own income. She worked for Mr. Funderburk in his restaurant and helped manage it and make it a success as many wives of business owners do. However, since they were never married a strict interpretation of the case law of this state allows Mr. Funderburk to simply walk away from Ms. Nichols taking all of his assets with him and does not consider the potentially destitute situation in which a woman like Ms. Nichols would be left.
¶ 34. There are hundreds of cases like Ms. Nichols's in our courts today and the number continues to grow but our system does not afford them any benefits or relief. In Mississippi there is a public interest in *274 marriage and historically the law favors marriage. J.W. Bunkley, Jr. & W.E. Morse, On Divorce and Separation in Mississippi § 1.02(7) (The Harrison Company ed.1957). It seems that in a judicial system that favors marriage that system would not reward someone for cohabitation without marriage the way this court is rewarding Mr. Funderburk.
¶ 35. Mr. Funderburk has the reward of housework, fathering two children, child care, insurance costs, living expenses and restaurant managerial responsibilities all performed for him by Ms. Nichols for about twelve years for the measly sum of her weekly restaurant salary of $240 a week. At the end of this relationship under the law as it is today he is able to walk away owing nothing more to this woman who failed to acquire any wealth or assets of her own because of her relationship and responsibilities to him.
¶ 36. If the Supreme Court of Mississippi truly favored marriage it would provide consequences for those in our state who continue to live together in a marriage-like state but without actually getting married. Consequences that would be equitable and fair for both parties involved considering the individual opportunities for personal gain and asset accumulation they forewent in order to contribute to their relationship. This would not allow one in such a relationship to take advantage of the other and leave them in a financial position much worse than that in which they had been accustomed.
¶ 37. The supreme court in Taylor v. Taylor, 317 So.2d 422 (Miss.1975), noted that the chancellor did not follow the strictest interpretation of the law but allowed for a just result necessary due to the circumstances of the people involved. In Taylor, two people lived together without the benefit of marriage for eighteen years and the chancellor awarded "support" payments to the woman, not alimony, because he felt the man had an obligation to support her. Id. I agree with both the holding and especially the reasoning in Taylor and hope our supreme court will require a similar standard throughout the state. This action would hopefully encourage those who could marry under the laws of our state to legally marry rather than merely cohabitate.
¶ 38. Mr. Funderburk owed support obligations to Ms. Nichols due to his relationship with her and this State should re-evaluate its position regarding this issue and afford women like Ms. Nichols the benefits they deserve.
MYERS, J., JOINS THIS SEPARATE WRITTEN OPINION IN PART.
LEE, J., DISSENTING:
¶ 39. While I understand the majority's interpretation of certain precedential caselaw, I respectfully disagree with its application of such law to the present case. As I interpret these cases and our standard of reviewing the findings of a chancellor, I conclude that the chancellor was clearly erroneous, and we must reverse and remand with instructions that the chancellor equitably distribute property accumulated through the joint efforts of David and Lori.
¶ 40. First, I note that David failed to file a brief.
While failure to file a brief is tantamount to a confession of error: Automatic reversal is not required where the appellee fails to file a brief. The appellant's argument "should at least create enough doubt in the judiciousness of the trial court's judgment that this Court cannot `say with confidence that the case should be affirmed.'" Where the appellant's brief makes out an apparent case of error, however, this Court is not obligated *275 to look to the record to find a way to avoid the force of the appellant's argument.
Graham v. Graham, 767 So.2d 277 (¶ 6) (Miss.Ct.App.2000) (citations omitted). Lori has made out an apparent case of error, and I find that the chancellor's neglect to notice such is reversible.
¶ 41. The majority declines to explain in detail those facts concerning certain of Lori and David's supposed assets, including the restaurant and the shared home; thus, I do so to support my conclusion that the chancellor committed reversible error.
¶ 42. Several people testified at trial concerning Lori's involvement in the family's restaurant business. Nearly every witness testified that Lori was in the restaurant every time he or she went there, but David was only there sporadically. Lori testified that she essentially managed the restaurant, ordering supplies, hiring and firing workers, and handling financial matters, and for this she was paid two-hundred forty dollars per week. David denied Lori had any role other than waitress and general employee, and he argues he paid her five-hundred dollars per week. Lori testified that she used the money she made at the restaurant to pay for groceries, gas, and a babysitter for their two children. She also testified that she bought her own car, paid for all the furniture for their home, paid for new carpet and most appliances, maintained insurance on the daughters, bought clothes for the children, bought the girls' Christmas gifts, and paid most bills, with David contributing little or nothing towards these expenses.
¶ 43. David's father owned the restaurant prior to David, and David financed purchase of the restaurant from his father in part through a bank loan of $25,000. Six weeks before trial, David sold the restaurant to Terry and Candy Conwill for $45,000. With the proceeds from the sale, David paid off a $9,000 note, which he had borrowed to make improvements to the restaurant. He also paid off another bank loan for $6,000, which he had borrowed to purchase lawn care items used when he was in the lawn maintenance business. David gave his dad $20,000 for what he claims was his father's half-interest in the business, although Lori testified that David gave his father $25,000 for the business when he purchased it from him. Of the remaining $10,000 from the purchase price, David testified that he used $5,000 for bulldozer work at the Mustang apartments, and also used $1,600 for the apartments. Of the original $45,000, this leaves $3,400 for which David had no explanation as to its whereabouts.
¶ 44. The evidence and testimony showed that Lori was an integral part of the restaurant's operation for many years, so much so that I find her efforts were "joint" with those of David as to entitle her to equitable distribution of proceeds from the sale of the business. Witnesses testified that Lori, for the most part, "ran the show" at the restaurant, hiring and firing and managing the business, always there when the restaurant was open. The chancellor even acknowledged in her opinion that, "Lori worked in the restaurant, apparently managing the business with little help from David ..." but notes that Lori's name was not added to the restaurant business, as if this single point is the major determinant. I find the chancellor erred in finding that Lori's weekly pay at the restaurant, which was used to pay for childcare for her and David's children and for gas and groceries for the family, precluded her from qualifying as a "partner" in the business. Accordingly, I would reverse and remand with orders that the chancellor review David's dissipation of the proceeds from the sale of the business and *276 equitably divide such proceeds between David and Lori.
¶ 45. Looking to the "marital" home, I note that the chancellor failed altogether to address this asset. The scant evidence in the record concerning the home was testimony that David paid the mortgage and he and his mother signed the original mortgage for the purchase of the home. Lori testified that she and David split paying utility bills and, except for the washer and dryer, she bought all appliances for the home, all the furniture, carpet, linoleum, paint, and all other furnishings for the inside of the home. The home increased in value from $16,000 at the time of purchase to approximately $55,000 at the time of trial. Although David paid mortgage payments, Lori testified she paid part of the utility bills, and her additional contributions to furnishing and maintaining the interior of the home certainly increased the value of the home such that she is entitled to some of the equity which had accumulated.
¶ 46. Lori testified that David often promised her that he would marry her, but when the time came for David to follow through, he always came up with an excuse not to get married. Throughout their entire relationship, Lori testified that she never left David, and she considered them to be married, just without a license. David denies ever talking of marriage with Lori, citing his prior marriage to another woman and his belief that a second marriage would be wrong for him.
¶ 47. In denying Lori's request for equitable distribution, the chancellor noted that Mississippi does not authorize awarding alimony when there has been no valid marriage. See Aldridge v. Aldridge, 116 Miss. 385, 397-98, 77 So. 150, 150-51 (1918). She also referred to supreme court cases in which the parties were not married to one another at the time of their separation, but where the court considered equitable distribution. See Davis v. Davis, 643 So.2d 931, 933 (Miss.1994) (couple never married, and court declined to order equitable distribution finding the woman was duly compensated at the separation for any economic contribution she made to the relationship); Pickens v. Pickens, 490 So.2d 872, 875 (Miss.1986) (couple married then divorced and resumed cohabitation; upon final separation, the court awarded woman equitable distribution for her domestic services rendered); Taylor v. Taylor, 317 So.2d 422, 422-23 (Miss.1975) (man was aware that putative wife of eighteen years had never divorced previous husband; court found that equity required equitable distribution to putative wife upon separation); Chrismond v. Chrismond, 211 Miss. 746, 757, 52 So.2d 624, 629 (1951) (husband never divorced previous wife and court found putative wife was entitled to equitable distribution for property accumulated through joint efforts). In the present case, the chancellor concluded:
At the case at bar, there is no record that a partnership was formed between Lori and David pertaining to the restaurant business or the apartment complex, and in fact Lori was paid a weekly salary for her work at the restaurant. Although she appeared to be instrumental in the restaurant business, her work was managerial in nature and she was thus compensated as such. The evidence does not support the contention that the parties acquired property through their "joint efforts."
Although the Court is extremely sympathetic to Lori's plight, there is no legal remedy existing at this time to compensate her for the 14 years that she chose to cohabitate without the benefit of marriage.
Therefore, her claim for equitable division of the property obtained during her cohabitation with David is denied.
*277 ¶ 48. I also note this Court's addition of Wooldridge v. Wooldridge, 856 So.2d 446 (Miss.Ct.App.2003) to the Davis, Pickens, Taylor and Chrismond line of cases. In Wooldridge, much like in Pickens, the couple was legally married for a length of time, then divorced and resumed cohabitation. At the final separation, the former wife sought equitable distribution of assets acquired during the time the couple cohabitated after the divorce. In both Wooldridge and Pickens the appellate courts found the woman was entitled to equitable distribution for services rendered or assets accumulated during the time she was living with the man. Wooldridge, 856 So.2d at 452 (¶ 17); Pickens, 490 So.2d at 875-76. This Court stated in Wooldridge:
Steve and Debra resumed cohabitation approximately one month after their divorce, and but for want of obtaining another marriage license, they lived in the same relationship in which they had lived from 1973 through 1994, holding themselves out to the public as well as their two daughters as having legally remarried. While we do not sanction palimony, we do believe in equitable distribution consistent with each party's contribution.
This case presents a unique situation, not altogether unlike Chrismond, Taylor and Pickens, in which, although the previously married parties were not married at the time of separation, equity requires that the chancellor compensate the woman for her joint efforts in building the assets of the man. As a result, we find no error in the chancellor's adherence to this Court's prior directive to compensate Debra for her services as a caregiver.
Wooldridge, 856 So.2d at 453 (¶¶ 19-20).
¶ 49. In Chrismond, Taylor, Pickens, and Wooldridge, the couples all actually married or purported to marry. In Davis, as in Lori and David's situation, the couple never actually married. Although Davis and the current situation are similar in some aspects, I find distinction. In Davis and in the present case, each couple lived together for roughly thirteen years, and during that time, a child or children was born to each couple. Davis, 643 So.2d at 932. The similarities end here. Travis Davis's mistress, Elvis, did not contribute to Travis's business ventures in any way, nor did Elvis prove either the existence of a business partnership agreement or that any of Travis's assets were jointly accumulated. Id. at 933. In contrast, testimony at trial revealed that Lori was a substantial contributor to managing David's businesses, plus she provided funds for household expenses and childcare costs with David contributing little or nothing. In Davis, upon separation, Travis Davis purchased a house for Elvis titled in her name, he remodeled and furnished the home, plus gave Elvis money for other household furnishings and bought her a new vehicle. Id. To the contrary, when Lori left David, David gave her nothing.
¶ 50. I recognize the rules which prohibit palimony and which condone marriage only as the joining of a man and a woman in conformity with state law. See Aldridge, 77 So. at 150-51; Miss.Code Ann. § 93-1-1 (Supp.2002). I do not purport to usurp legislative authority nor condone such action here. However, I recognize that our law sanctions an equitable division of property accumulated by two persons as the result of their joint efforts. See Wooldridge, 856 So.2d at 452 (¶ 17); Pickens, 490 So.2d at 875-76; Taylor, 317 So.2d at 423; Chrismond, 211 Miss. at 757, 52 So.2d at 629.
¶ 51. The supreme court found in Taylor:
The chancellor stated that after the parties had lived together in a relationship *278 of husband and wife for a long period of time that it would not be fair and equitable for him to walk out and leave her as if she were a perfect stranger.... These people lived together and shared the vicissitudes of life for eighteen years. The separation cast her adrift just as surely as if she had been his lawful wife.
Taylor, 317 So.2d at 422-23. In Taylor, the supreme court further found that the chancellor could not hold to the strict letter of the law if it required him to ignore the fact that he was dealing with human beings. Id. at 423. In the present case, equity prevents David from leaving Lori as "a perfect stranger" without equitable distribution, and I find the chancellor erred in failing to so find.
¶ 52. I find Lori was a substantial contributor to the accumulation of assets with David such that she should receive an equitable share of those assets. Accordingly, I would reverse and remand to the chancellor with instructions that she equitably divide proceeds from the sale of the restaurant which were accumulated due to joint efforts of David and Lori, and that she obtain an appraisal of the home and equitably distribute to Lori her fair share of such value. I disagree with the majority's conclusion that the chancellor's decision was supported by facts from the record. Accordingly, I dissent and would reverse and remand.
KING, P.J., THOMAS AND MYERS, JJ., JOIN THIS SEPARATE WRITTEN OPINION. BRIDGES, J., JOINS THIS SEPARATE WRITTEN OPINION IN PART.